**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JIMMY POWELL, a/k/a**
**JAMEL ANSAARU EL MAJID**                                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:18-CV-472-CWR-LRA**

**NOLAN ROGER DAVIS, Food**
**Director; EUGENE WIGELSWORTH,**

                                                                    **DEFENDANTS**

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This matter came before the Court on the Defendants' Motion for Summary

Judgment.    The Plaintiff, Jimmy Powell, was housed in the custody of the Mississippi

Department of Corrections [MDOC] at the South Mississippi Correctional Institution

[SMCI] in Leakesville, Mississippi, from 2012 until he was moved to the Yazoo County

Federal Correctional Institution in September, 2019.

According to Powell, he is a practicing Muslim and has been requesting a Halal-

diet since about 2006-2007.    The denial of the diet began in about 2007 or 2008, and he

filed his first grievance with the Administrative Remedy Program [ARP] in 2012.

According to Plaintiff, he cannot eat much of the food served at SMCI and has to "piece-

meal" his trays of food at each meal.    As a result, he has contracted acid-reflux disease

and has been placed on medication.

Plaintiff previously filed a Complaint also charging that he was not receiving a

Halal diet in *Powell v. Morris*, et al, Cause Number 1:14cv462-RHW.    On February 22,

2016, that case was dismissed due to his failure to exhaust his administrative remedies [48, 49]. The opinion was affirmed by the Court of Appeals for the Fifth Circuit on August 11, 2017. The parties apparently now agree that Plaintiff has now exhausted any administrative remedies that are available to him.

Plaintiff named Eugene Wigelsworth, the Director of the Chaplains Department for MDOC, and Kenneth Powell, the Director of the Chaplains Department at SMCI. Powell also named as Defendants Roger Davis and Gene Newsome, whom Plaintiff described as Food Directors for Valley Foods Services. The docket reflects that the summonses for these two persons were served on a "Patrice Bailey (Secretary)" on September 27, 2018 at an address different from the address listed on the summons [20]. At the omnibus hearing, the Court was informed that these two Defendants had not been properly served. Process was re-issued to Davis shortly after the hearing, and he executed a waiver of service on October 8, 2019 [53]. Davis is currently the Food Services Director for MDOC.

According to Powell, Defendant Davis refused to prepare a Halal diet or to accommodate Plaintiff's dietary needs in any way. In so doing, Powell claims that Davis discriminated against Plaintiff's Muslim beliefs and refused to comply with his requests for a diet that conformed with his beliefs. Powell charges that Defendant Powell used discriminatory tactics in refusing to assist him in obtaining a proper Halal-diet and falsely answered his grievances. According to the Plaintiff, Defendant refused to assist or accommodate Plaintiff in any way to obtain a Halal-diet. He also claims that,

although Defendant Wigelsworth is the overall Director of Chaplain Services for MDOC

and should have authorized the Halal-diet for Powell, he refused to do so.

Plaintiff testified that his religion requires him to eat a diet that is not just pork

free; he requires a "clean diet," with no additives, sodium nitrates, etc.   He needs cheese,

fish, fresh fruits, vegetables, and fruit juices.   This is because of his religion and because

of health reasons--- he is allergic to nitrates.   Powell charges that by failing to

accommodate him, these Defendants have conspired to deny him his First Amendment

right to practice his religion within the proper boundaries of the MDOC.   He seeks

compensatory damages, punitive damages, and a declaratory judgment regarding the

manner in which meals will be served in the future.

Defendant Davis submitted an affidavit in support of the Motion for Summary

Judgment, in which he affirmed his knowledge of MDOC's food services policies and

admitted that he is involved with developing menus for MDOC inmates.   He declared,

"In preparing menus for inmates, I am mindful of the Supplemental Consent Decree

entered in the Northern District of Mississippi, which was the result of suits brought by a

class of Islamic prisoners against MDOC."   That Consent Decree resolved the issues

raised by Islamic prisoners in three cases brought in the Northern District of Mississippi:

*Givhan v. Puckett*, 4:82cv64; *McLamb v. Anderson*, 4:01cv95; and *Laushaw v. Anderson*,

4:01cv120.

The Defendants argue that they are entitled to summary judgment on grounds that Powell's move to federal custody precludes any injunctive-type relief, as he requested in the form of a declaratory judgment; that the Defendants are entitled to immunity for any claims made against them in their official capacity; that they are entitled to qualified immunity as to any individual capacity claims because they based their menus on the Consent Decree; and that Powell has not established the requisite physical injury to be entitled to compensatory damages under the Prison Litigation Reform Act.

In response to the Motion, Powell clarified that he is proceeding against the Defendants in their individual capacities, and that they are not immune from liability for the violation of clearly established rights.   Powell also argues that the Defendants cannot rely on "what purports to be a Consent Decree" to avoid liability because it no longer applies to MDOC facilities and is void.   He further argues that the reasons advanced by the Defendants to show that the efforts they have made to accommodate the diets of Islamic inmates are insufficient to outbalance his right to a Halal diet and that they have discriminated by providing a Kosher diet to a Jewish inmate who is a federal prisoner being held at an MDOC facility.    Finally, Powell asserts that he suffers from acid reflux disease as the result of the food that he has been forced to eat, and that is a sufficient physical injury to entitle him to compensation.

For the reasons that follow, the undersigned agrees with the arguments advanced by the Defendants and recommends that this matter be dismissed with prejudice.

The Defendants are all employees of the Mississippi Department of Corrections. Like the states themselves, state agencies and state officials are protected from suit by the doctrine of sovereign immunity.   *Corn v. Mississippi Department of Public Safety*, 954 F.3d 268, 274 (5th Cir. 2020); *Bryant v. Tex. Dep't of Aging & Disability Servs*., 781 F.3d 764, 769 (5th Cir. 2015).   This principle prevents Powell from seeking relief against these Defendants in their official capacity, but it does not preclude liability in their individual capacity.   *Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 672 (1996).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks,* 573 U.S. 228, 243 (2014), quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 744 (2011). Under this doctrine, courts may not award damages against a government official in his personal capacity unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct." *Id*.   The test for qualified immunity is well established: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss*., 135 F.3d 320, 325 (5th Cir.1998).   Powell has the burden of rebutting the Defendants' qualified immunity defense, and the Defendants prevail if he fails to satisfy either prong.   *Brown v. Callahan*, 623 F.3d 249,

253 (5th Cir. 2010); see *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting the lower courts permission to evaluate either prong of the qualified immunity analysis first).

The Defendants in each of the cases that resulted in the Consent Decree included supervisory officials with the Mississippi Department of Corrections.1   As a result of the litigation, the Plaintiffs and MDOC agreed to the following terms regarding meals for Islamic inmates:

> Defendants have contracted to provide three balanced meals to all inmates, including Plaintiffs.   Defendants will continue to meet the *Lockhart v. Hollowell*, GC73-70-K, requirement of at least one (1) pork-free meal daily.   Additionally, a sufficient quantity of pork-free items will be included on the other two meals per day to insure that Islamic inmates receive an adequate daily diet of no less than 2,000 calories per day.   And in addition, Defendants will post in each prison housing unit a copy of the daily menu so that each member of Plaintiffs' class will be advised of the meals on a daily basis.   The Defendants agree to let the Imam at each Correctional Facility negotiate with the Islamic inmates for further privileges of the Islamic Class at that facility.

The consent decree requires MDOC to provide inmates with at least one (1) pork-free meal daily and to include a sufficient quantity of pork-free items in the other two meals to insure that Islamic inmates receive a daily diet containing at least 2,000 calories per day.   The affidavit submitted by Roger Davis states that MDOC goes well beyond the terms of the consent decree.   He included the four week rotation memo for

---

1 The *Givhan* case was consolidated into the *Gates* litigation.   The *McLamb* and *Laushaw* cases were consolidated with one another, and the Defendants included James Anderson and Christopher Epps, sformer Commissioner of MDOC; Fred Childs, the former Superintendent at the Central Mississippi Correctional Facility; James Holman, the former Warden of Unit #3 at CMCF; and Ronald King, the former Superintendent of the South Mississippi Correctional Institution.

fall/winter 2019-20 that showed, out of 84 meals, pork was only served on four occasions.   The meals have a weekly average of 2,900 calories per day.

Powell argues that the terms of the consent decree cannot be used as a baseline for menu preparation because it is void.   The undersigned has carefully reviewed the Consent Decree, as well as the docket for the three cases consolidated in that litigation, and finds no evidence that the Decree is void.   MDOC officials are the Defendants whose conduct is established by the Decree.   There is no sunset provision contained therein, the terms of the decree specifically contemplate future performance on the part of MDOC and it contains instructions for initiating future legal actions.   It is true that *Ghivan* was consolidated with the *Gates* litigation in the Northern District, and those cases have been finally dismissed.   *See Gates v. Barbour*, 4:71cv6; *Stevenson v. Reed*, 4:73cv76; and *Givhan v. Puckett*, 4:82cv64; 2011, Order Finally Dismissing State Corrections Facilities Portion of Gates v. Barbour and Consolidated Cases, entered on March 10, 2011 [123].

*McLamb* and *Laushaw* have not been dismissed.   Powell himself contested the Consent Decree in 4:01cv120 by appearing as a plaintiff in a Motion for Temporary Restraining Order in that case [75] and in a Petition to Amend the Decree [76].   In the Petition, he refers to "the existing consent decree of July 29, 2008," and, in the Motion, he calls it the "standing consent decree."   Both documents were filed in November, 2010.   In an Order dated February 17, 2011, Judge Jerry Davis denied motions filed in those cases, stating that a review of the motions, "reveal that class counsel continues to

7

actively represent the class and address issues with the defendants as they arise.   The court remains confident that class counsel will vigorously pursue not only informal resolution but any needed court action."   Later, in August, 2011, months after the *Gates* dismissal, Judge Allen Pepper denied other motions in *Laushaw* and *McLamb*, not because the cases were closed, but because the motions were filed by non-parties. Clearly, Judge Pepper did not think that those cases were over, or the decree void or expired, and, apparently, neither did Powell.   There is no explanation as to why Powell believes that now.

The Supreme Court has clearly established consent decrees' status as a final judgment, holding that a consent decree "is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992).   In *Rufo*, considering the legitimacy of proposed modifications to a consent decree requiring the construction of a new jail , the Court addressed the somewhat nebulous nature of consent decrees, generally:

> A consent decree no doubt embodies an agreement of the parties and thus in some respect is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

*Id*. at 378.   And, as the Fifth Circuit has stated, "[t]he entry of a consent decree is more than a matter of agreement among litigants. It is a judicial act." *LULAC v. Clements*, 999 F.2d 831, 845 (5th Cir.1993).

When Powell submitted a grievance through the Administrative Remedy Program, complaining that he had not been given the Halal diet that he requested, he received a response from Defendant Davis that he should make his request through the Chaplain's Office.   The letter went on to give Powell this additional information:

> MDOC entered into a consent decree from the civil action Keith Givhan vs. Steven Puckett and James McLamb vs. James Anderson, consolidated with John Laushaw vs. James Anderson.   In this consent decree it states that the defendants will continue to meet the Lockhart v. Hollowell requirement of at least one pork free meal per day. Additionally, a sufficient quantity of pork free items will be included in the other two meals per day to insure the Islamic inmates receive an adequate daily diet of no less than 2000 calories per day.   We only have two items on our menu that consist of pork, and they are Ham and the Pepperoni Hot Pockets.   All of our pudding and gelatins are pork free and do not have any pork by-products.   Therefore we are in compliance with the consent decree.

The First Step Response Form was signed by Defendant Kenneth Powell, the Director of SMCI's Chaplain Department, on August 19, 2014, and he noted that Davis told him that he had explained to Powell that he was following the consent decree "until it is replaced by another consent decree."   Later, on December 8, 2014, Defendant Wigelsworth, MDOC's Director of Religious Programs, acknowledged a letter from Powell.   In that letter, Wigelsworth said that he had been "assured by the Director of Food Services that Food Services at South MS Correctional Institution are aware of and in compliance with the Federal Court Order dated 7/28/2008 which defines support to MDOC offenders affiliated

9

with the Islamic faith group."   It is clear that the Defendants relied on the Consent Decree with regard to preparation of meals for Islamic inmates.

As stated earlier, the defendants will prevail in this case if their conduct was objectively reasonable in light of the clearly established law at the time of the incident. *Hare*, 135 F.3d at 325.   The dietary provisions of the Consent Decree amounted to a judicial act that, for purposes of MDOC's menu preparation, was the law.   A state actor may reasonably rely on the provisions of a consent decree and conform his conduct thereto, for the purposes of entitlement to qualified immunity.   *Clark v. Evans*, 840 F.2d 876, 884 (11th Cir. 1988).   Certainly, there was no clearly established law requiring MDOC officials to go beyond the consent decree's terms.   For this reason, Powell's claims fail, and the undersigned recommends that the Defendants' Motion for Summary Judgment be granted and this case dismissed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   28 U.S.C. § 636;   Fed. R. Civ. P. 72(b); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 10th day of August, 2020.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE